## Stauffer, Appellant, *v.* New York Central & Hudson River R. R. Co.

*Carriers—Common carriers—Railroads—Live stock contract—Delay—Feed charges.*

Where a contract for the transportation of cattle from a point in Pennsylvania to Philadelphia contains a "36 hour limitation" with a provision that the cattle shall be "put off at Lancaster, Pa., for feed and water," and the carrier takes the car over its own line and a connecting line to Philadelphia without going through Lancaster, without apparent delay or any injury from delay, and the shipper orders the cattle sent to Lancaster where they were sold, the shipper cannot claim as elements of damage for breach of the contract, feed charges in Philadelphia, freight charges from Philadelphia to Lancaster, a loss because of a decline in the market price of cattle at Lancaster, yard charges at Lancaster, and feed charges pending the sale.

Argued Nov. 16, 1916. Appeal, No. 312, Oct. T., 1916, by plaintiff, from order of C. P. Lancaster Co., March T., 1914, No. 42, refusing to take off nonsuit in case of H. L. Stauffer and J. G. Stauffer, trading as John Stauffer & Sons, v. New York Central & Hudson River Railroad Company and The Pennsylvania Railroad Co., Garnishee. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Foreign attachment in assumpsit for breach of a contract for the transportation of cattle. Before HASSLER, J.

The facts are stated in the opinion of the Superior Court.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*C. E. Montgomery,* for appellant, cited: Eckert v. Penna. R. R. Co., 211 Pa. 267; Pavitt v. Lehigh Val. R. R. Co., 153 Pa. 302.

*John A Nauman,* for appellee, cited: Shoemaker v. Adams Express Co., 51 Pa. Superior Ct. 284; Pavitt v. Lehigh Valley R. R. Co., 153 Pa. 302.

OPINION BY HENDERSON, J., March 16, 1917:

The defendant entered into a contract in writing with the plaintiffs to transport a car load of cattle from Ulysses, Pa., to Philadelphia. The contract contained a "36 hour limitation" and bore a memorandum "Put off at Lancaster, Pa., for feed and water." The defendant transported the cattle directly to Philadelphia over its own line and the Philadelphia & Reading Railroad with which it connected. The cattle were not carried through Lancaster and therefore not put off for feed and water at that place. The plaintiffs' action was brought to recover damages for a breach of this contract in failing to put off the livestock at Lancaster for feed and water and for not delivering the same within a reasonable time. The specification of items of loss include feed charges in Philadelphia, freight charge from Philadelphia to Lancaster, a loss because of a decline in the market price of the cattle at Lancaster, yard charges and feed charges at Lancaster while the cattle were on hand and being sold in the open market. The total of these items is $187.41. The contract contains a provision that in the event of any unusual delay or detention of said livestock caused by the negligence of the carrier or its employees or its connecting carrier or their employees or otherwise the said shipper agrees to accept as full

compensation for all loss or damage sustained thereby the amount actually expended by said shipper in the purchase of food and water for the said stock while so detained. The contract provides for the delivery of the cattle at Philadelphia and that is the place at which they were to be received by the shippers. The provision for discharging the stock at Lancaster for feed and water was incidental to the transportation and while a liability might have arisen for failure to so handle the stock a right of action would only arise on that account in case injury resulted from such omission. No evidence was offered on that point and there is nothing in the case from which an inference may be drawn that any damage was sustained by the plaintiffs on that account. Nor is there any evidence of delay. The cattle were shipped on the fifth of September. It does not appear when they arrived in Philadelphia but on September 9th the connecting carrier made inquiry of the plaintiffs in Lancaster as to what disposal should be made of the stock then in Philadelphia. If it were assumed that they had arrived that day there is a lack of evidence to show that the plaintiffs sustained any loss on that account, but we have not discovered in the record sufficient evidence that there was a belated delivery in Philadelphia. Moreover, if there had been delay the contract fixes the amount of damage at the cost to the shipper of the food and water obtained for the stock during the detention. As there was no evidence on this point there was no foundation for a verdict if the evidence had disclosed an unwarranted delay. The cattle were shipped from Philadelphia to Lancaster by direction of the plaintiffs and were there sold by the latter. We think it evident that a claim for transportation from Philadelphia to Lancaster and for the cost of feed and yard room in the stock yards at the latter place could not be legally enforced as items of damage in the action. The cattle were delivered where the plaintiffs directed them to be delivered. Lancaster was not the point of

destination and there was no obligation on the part of the carrying company to transfer them from the place where they were bound to deliver them to Lancaster. For like reason the defendants were not bound to keep the cattle at Lancaster. When they were delivered at Philadelphia the obligation of the carrier was performed so far as the transportation was concerned and there was no obligation to care for them in Lancaster. Nor is there a more substantial support for the claim of a loss on the sale of the cattle at Lancaster. The defendant is not affected by the price of the cattle at that place nor for the delay in their sale caused by the shipment from Philadelphia to Lancaster. We may infer from the bill of lading that it was the intention of the plaintiffs to dispose of the cattle in Philadelphia. However that may be, the carrier is not responsible for a loss caused by the transfer of the stock from the point of destination to another market where the loss is alleged to have occurred. As the only causes of loss set up by the plaintiffs are the failure to put off the stock at Lancaster for feed and water and to deliver at the destination within thirty-six hours and the evidence admissible under the contract fails to disclose any damage which resulted to the plaintiffs the action of the court in granting a nonsuit was well taken.

The judgment is affirmed.